## SLUSSER v. DANIEL et al.

No. 10609—Opinion Filed April 25, 1922.

(Syllabus.)

### Appeal and Error—Discretion of Trial Court —Refusal of Continuance.

The granting or refusing to grant a continuance of a case rests largely in the judicial discretion of the trial court, and in the absence of abuse of said discretion, the ruling of the trial court will not be disturbed; but where, from an examination of the entire record, this court is unable to say that the action of the trial court in refusing a continuance and suppressing the depositions of witnesses was harmless, but it appears that the same were prejudicial to the substantial rights of the complaining party, and probably resulted in a miscarriage of justice, the action of the trial court constitutes reversible error. Held, in the instant case, that the action of the trial court in the manner stated constituted reversible error, and the judgment of the trial court is reversed, and the cause remanded for a new trial.

Error from County Court, Ottawa County; W. C. Barry, Judge.

Action by W. P. Daniel and A. H. Daniel against Frank E. Slusser for damages. Judgment for plaintiffs, and defendant brings error. Reversed and remanded.

E. S. Bessey, for plaintiff in error.

Nesbitt & Nesbitt, for defendants in error.

JOHNSON, J. The record discloses that on the 28th day of August, 1918, the defendants in 'error, plaintiffs below, and herein referred to as plaintiffs, commenced their action against the plaintiff in error, herein referred to as defendant, by filing their petition in the county court of Ottawa county, Okla., alleging, in substance, that the plaintiffs, in the early part of the month of March, 1918, entered into an oral contract with one H. E. Roll, then the duly authorized and acting agent of the defendant, whereby it was agreed between the plaintiffs and defendant that plaintiffs should double-disc 36½ acres of ground, known as the New Castle addition to the city of Miami, Okla., and place said ground in oats for an agreed price of $150, and that, in addition to said money consideration, the plaintiffs were to have the privilege of pasturing and harvesting said oats. That pursuant to said contract, plaintiffs double-disced and seeded to oats the said tract of land according to their agreement with defendant, and that the defendant paid them the monetary consideration, $150, but refused to permit the plaintiffs to cut, harvest, thresh, or use and possess said oats, but that the defendant harvested and took possession of said oats to the damage of the plaintiffs in the sum of $450.

The defendant made answer, admitting that a contract was made with plaintiffs to double-disc and seed to oats the tract of ground known as Castle Park addition to Miami, Okla.; admitted that he agreed to pay for such work and seeding the sum of $150; admitted that said sum had been paid, and alleged that said payment was payment in full for such work and services; that the plaintiffs had no interests in said oats whatever, and that said oats belonged to him. All the other allegations of the petition were denied by a general denial.

Upon the issues thus joined the cause proceeded to trial to a jury, resulting in a verdict in favor of plaintiffs in the sum of $150. The defendant filed a timely motion for a new trial, which was overruled by the court, from which ruling of the court the defendant has appealed, and to reverse which this proceeding in error was regularly commenced.

The defendant's specifications of error are as follows:

"1. The court erred in suppressing the deposition of defendant, Frank E. Slusser, before the trial.

"2. The court erred in suppressing the depositions of witnesses S. D. Ross and E. W. Augustine before the trial.

"3. The court erred in not permitting these depositions to be introduced in rebuttal as requested by defendant.

"4. The court erred in denying the motion for a continuance.

"5. The court erred in the giving instructions Nos. 2 and 3 as given by the court.

"6. The court erred in refusing to give instructions Nos. 5 and 6 as requested by the defendant.

"7. The court erred in overruling defendant's motion for a new trial."

The first four of these specifications are so related that we will consider them together, reviewing the action of the trial court in suppressing certain depositions therein referred to, and overruling the defendant's motion for a continuance.

Under the issues made by the pleadings of the parties and the evidence produced upon the trial, there was but one disputed question of fact in the cause to be submitted to the jury, which was, What were the terms of the contract of the parties out of which this litigation arose? It is clear from the pleadings, and is not controverted by the evidence, that the defendant, Frank E. Slusser, and associates, S. D. Ross and W. B. Augustine, all of whom resided at Grand Island, Neb., were the owners of 36½ acres of land, the title to which stood in the name of said Slusser, and the land was located adjacent to the city of Miami, Okla., in Ottawa county, which they had platted into a townsite addition to the city, known as Castle Park addition to Miami, Okla., and that one Harry C. Roll, of Grand Island, Neb., was at the time of the negotiations leading up to the contract complained of stationed or located in the city of Miami, Okla., and acted for the defendant in the negotiations leading up to and making of the contract between the parties. And that said negotiations were commenced about the first of March, 1918, and resulted in having said tract of land sowed to oats by the plaintiffs, W. P. and A. H. Daniels, and that the said Roll, as the agent of the defendant, paid to the plaintiffs the sum of $150.

None of the foregoing facts are in any way disputed by the parties, and nothing further arose between them until about the time the oat crop on the premises was ready to harvest, at which time the said Roll had returned to Grand Island.

Neb., and the parties named as his principals visited the city of Miami and the premises described, and then it was that a controversy arose between the parties as to the ownership of the oat crop, both claiming same. The plaintiffs had commenced to harvest the oats on a Saturday sometime in June, and after cutting and binding about four acres thereof, the party operating the binder, finding that the oats were too green to be cut, postponed a further cutting. On the next day, which was Sunday, the defendant procured a harvesting machine and caused the crop to be harvested and removed off the premises to an adjoining tract of land across the section line, lands occupied by one Anderson, where the oats were stacked and afterwards partly consumed by fire and the remainder thereof was threshed and deposited in an elevator near by, where they were shown to be at the time of the trial in the possession of the defendant.

The plaintiffs, the Daniels, both testified as to the terms of the contract, which was shown to be oral, as entered into by Roll, the agent of the defendant, and which contract was also testified to by the agent, Roll, by deposition, and the testimony of the respective parties was directly in conflict as to the terms of the contract, the plaintiffs testifying, in substance, that they were to receive for discing the land and furnishing the seed and sowing the oats the sum of $150, and in addition thereto were to have such of the oats grown upon the land as might be left upon the part of the tract of land unsold as town lots, and that were not destroyed by grading streets. The testimony of the agent, Roll, was that no part of the crops were to be the plaintiffs', but that the consideration of $150 paid was the sole consideration to the plaintiffs for furnishing the seed and planting the oats.

This disputed question of fact was submitted by the court to the jury by written instructions, and the jury returned a verdict in favor of the plaintiffs for the sum of $150, as hereinbefore stated.

The record discloses that upon the trial certain depositions were taken in Grand Island, Neb., being the depositions of the defendant, F. E. Slusser, and his associates, S. D. Ross and W. E. Augustine, and his agent, Harry C. Roll. On December 3, 1918, three days preceding the trial, the plaintiffs filed and presented to the court a motion to suppress the depositions of the defendant, F. E. Slusser,

and his associates, S. D. Ross and W. E. Augustine, alleging as grounds therefor that the testimony contained therein was wholly incompetent, irrelevant, and immaterial; that they contained self-serving declarations and were replete with testimony relating to conversations and letters passing between witnesses and defendant's agent, H. E. Roll, and not binding on the plaintiffs. The motion to suppress these depositions was by the court heard and sustained, to which ruling the defendant excepted. Thereupon the cause was reset for trial for December 7, 1918.

After the suppression of these depositions, and on December 7, 1918, counsel for the defendant filed a verified motion for continuance which was as follows:

"E. S. Bessey on his oath states that he is the agent and attorney for the defendant; that on the 4th day of December, 1918, affiant caused subpoenas to be issued for Charles Farrier and Charles Vorhees, residing near Miami and Quapaw, respectively, in Ottawa county, Okla., and that said subpoenas were immediately placed in the hands of the sheriff for service returnable at 9 o'clock a. m., Dec. 7, 1918; that said subpoenas have not been returned and said witnesses are not present and defendant has used due diligence to procure their attendance. That if said witnesses were present each of them would testify that they were present when Harry C. Roll made a contract for defendant, Slusser, with the plaintiffs to seed the ground, described in plaintiffs' petition, to oats; that if present, they, and each of them would testify that the full and only compensation said plaintiffs were to receive for said seeding was $150, and that there was no agreement that said plaintiff should have in addition thereto the oats grown on said land, and that at the time that said agent, Roll, specifically stated to said plaintiffs that they would not have said oats either for pasture or harvesting or in any other manner, and that at that time said agent, Roll, disclosed to said plaintiffs the extent and limitations of his agency, which was to hire some one to disc and seed the land. Affiant believes that if this cause is continued that said witnesses can be procured in this case and that the statements herein made are true."

As hereinbefore stated, the sole controverted issue was as to the terms of the oral contract, and the record discloses that the contract was entered into between the plaintiffs and Mr. Roll, acting as the agent of the defendant, Slusser. The plaintiffs both testified that they were to receive, as compensation for seeding the premises to oats, the sum of $150, which was paid, and in addition thereto the oat crop left upon such of the premises as had

not been sold or graded as streets, and that there were about 32 acres that was harvested, and that the yield was about 25 bushels or over per acre, and that oats, at threshing time, were worth in the market 85 cents per bushel. As to the quantity of oats raised and harvested and the market price thereof, there was no conflict in the testimony. But as to the terms of the contract, Mr. Roll testified at great length (the last question asked him being No. 187), to which testimony only two objections were urged, which went to the question of the instructions that his principal had given him in regard to renting the premises, both of which objections were overruled by the court, and he was permitted to answer; his testimony being that his principal, the defendant, instructed him not to rent the land on shares, as he did not want a tenant to have any control over the premises or have it tied up so as to prevent the sale of lots or the free use of the same in the meantime, but to pay the price of $150 for furnishing seed and performing the labor in sowing the oats. So it appears that upon the issue, that is, the terms of the oral contract, the evidence was directly in conflict; the plaintiffs giving their version of the contract and the agent of defendant his. The depositions of the defendant and his two associates were suppressed on motion of plaintiffs' counsel about four days before the trial, to which action of the court the defendant excepted, and the cause was set for trial three days later, and it is obvious that there was not sufficient time in which to retake the depositions.

The grounds for suppressing the depositions were that the evidence was incompetent, irrelevant, and immaterial, and contained self-serving declarations and answers. The depositions, however, were offered in the trial of the cause, and, upon objection, were excluded and exceptions saved. Before going into the trial the defendant moved for a continuance, setting up that on the day the depositions were suppressed he caused subpoenas to be issued for Charles Farrier and Charles Vorhees, who resided near Miami and Quapaw, Ottawa county, respectively, and that subpoenas were immediately placed in the hands of the sheriff for service and returnable at 9 o'clock a. m., December 7, 1918; that said subpoenas l ad not been returned and said witnesses were not present, and if present, would testify that they were present when Harry C. Roll made the contract for defendant, Slusser, with the plaintiffs to seed the

ground described in plaintiffs' petition to oats; that each of them would testify that the full and only compensation said plaintiffs were to receive for seeding was $150, and that there was no agreement that said plaintiffs should have in addition thereto the oats grown on said land, and that at the time said agent, Roll, specifically stated to said plaintiffs that they would not have said oats either for pasture or harvesting or in any manner, and that at that time said agent, Roll, disclosed to said plaintiffs the extent and limitation of his agency, which was to hire some one to disc and seed the land; that affiant believed that if the cause were continued said witnesses could be procured, and that the statements made were true.

It is clearly obvious that the testimony of these witnesses, as stated in the affidavit for a continuance, was very material to the defendant, and while the application was probably not in full compliance with the statute, yet, in view of the facts of the single issue involved, and the depositions of the other witnesses having been suppressed, and the very unusual nature of the plaintiffs' claim as to the terms of the contract, it seems to us that the application should have appealed very strongly to the discretion of the trial court, and we cannot say there was not an abuse of the sound, judicial discretion of the trial court in overruling the application for a continuance, nor can we say that the action of the court in overruling the application for a continuance did not deprive the defendant of the constitutional and statutory right to a fair and impartial trial. Moreover, we have carefully examined the suppressed depositions of the defendant and his associates, and while very many questions and answers were subject to be excluded on timely objections made at the trial, yet, on the other hand, we think they contained very much evidence that was admissible and tended strongly to corroborate the testimony of their admitted agent, Roll, upon the material issue in the case, and likewise we cannot say that the action of the trial court in suppressing the depositions as a whole was not prejudicial error and did not affect the substantial rights of the defendant.

We therefore conclude that the errors of the court in the matters stated were not harmless under section 6005, Rev. Laws 1910, but, on the other hand, we believe that they were extremely prejudicial to the substantial rights of the defendant.

For the reasons stated, the judgment of the trial court is reversed, and the cause remanded for a new trial.

PITCHFORD, V. C. J., and KANE, MILLER, and KENNAMER, JJ., concur.