**HEGGEM et al. v. KILPATRICK et al.**

No. 17917. Opinion Filed Sept. 11, 1928.

Rehearing Denied Nov. 20, 1928.

A. J. Biddison, Harry Campbell, Valjean Biddison, and John H. Cantrell, for plaintiffs in error.

A. F. Moss, L. G. Owen, J. C. Farmer, Roger L. Stephens, and Fred L. Hoyt, for defendants in error.

DIFFENDAFFER, C. Defendants in error were plaintiffs, and plaintiffs in error were defendants below. The parties will herein be designated as in the trial court.

Plaintiffs sue for damages and in substance allege: That in 1917, plaintiffs and defendants were joint owners of certain oil and gas properties in Bourbon and Crawford counties, Kan., consisting of about 2,500 acres which had been blocked by plaintiffs, known and referred to as the Walnut property; that plaintiffs owned an undivided one-half interest; and that the parties were operating said property as co-owners; that shortly prior to September 1, 1917, Heggem advised one Henry A. Porter that plaintiffs desired to sell their interest in said property; that on said date Porter advised Heggem that he would give plaintiffs $100,000 for their interest, $20,000 cash and the balance in four equal monthly installments; that thereupon defendants entered into a fraudulent, unlawful design, scheme or understanding to defraud plaintiffs of the benefits of said offer; that knowing full well, or having reason to believe, that plaintiffs would accept the offer, defendants

concealed; the offer from plaintiffs, and falsely represented to plaintiffs that the offer was for an undivided one-half interest; that is, for one-half of plaintiff's interest and one-half of defendants' interest, and with intent to deceive plaintiffs, Heggem falsely advised them that the offer was for an undivided one-half of the interests of plaintiffs and an undivided one-half interest of defendants, thus, if the offer was accepted, it would leave the plaintiffs as the owner of an undivided one-fourth interest and defendants with an undivided one-fourth interest, and Porter a one-half interest. The plaintiffs advised Heggem that the offer would be accepted; that Heggem, in order to further perpetrate the fraud, thereafter falsely represented to Porter that plaintiffs would not sell their entire interest, but would be willing to sell one-half of their interest, or a one-fourth interest in the entire property, and that in order that the deal might be consummated, defendants would join with plaintiffs and sell Porter the one-half interest he desired for $100,000; that on September 1, 1922, plaintiffs and defendants entered into an agreement with Porter whereby they agreed to assign to him an undivided one-half interest in said property for the sum of $100,000, $20,000 cash and the balance in four equal monthly installments; that upon the execution of the agreement, Porter paid defendants the $20,000, and on October 1, 1922, Porter paid defendants the $20,000 due on that date; that thereafter, in furtherance of their wrongful scheme to defraud plaintiffs and acquire to themselves the benefits and profits, defendants falsely represented to plaintiffs that Porter would likely not comply with his contract unless he were given a substantial discount, and that on account of the great expense of developing the property, plaintiffs and defendants would be required to expend more money than they had received from Porter in developing the property; that defendants further advised plaintiffs that, if the discount was not allowed and Porter acquired an interest in the leases, he would desire to drill additional wells and the share of plaintiffs and defendants of the necessary expenses thereof would soon equal the amount they were receiving for the interest sold to Porter, and that the property was of no value and production in paying quantities could never be obtained, and that it was useless to expend further money in developing the property, and that it would be better to transfer the entire property to Porter, and if necessary discount the balance of the purchase price

to such an extent as would induce Porter to pay at once the balance thereof; that the representations that Porter would probably not comply with his contract were false, known by defendants to be false, and were made with intent to defraud and deceive plaintiffs; that in truth and in fact Porter was ready, willing and able to comply with his contract and had not requested any discount, nor had he expected any discount; that plaintiffs had no opportunity to ascertain the truth or falsity of these statements, for the reason that neither of the plaintiffs knew Porter, except casually, nor had they taken part in the negotiations with Porter, but that all such negotiations with Porter had been conducted by defendants exclusively, acting for themselves and plaintiffs, and duly authorized thereunto by plaintiffs; that plaintiffs had no information concerning Porter except from defendants, and that defendants had, as a part of their scheme, by various acts and contrivances, prevented plaintiffs from meeting Porter or talking with him concerning the transaction; that in July, 1917, plaintiffs had advised defendants that they, plaintiffs, were willing to do with their interest anything that defendants were willing to do with their similar interest, and would be controlled in all their actions with reference to the management and sale of the property by the advice and action of defendants, and that defendants knew and realized that plaintiffs reposed absolute confidence in the statements and intention of defendants to deal fairly and to the best interests of all concerned, and believed all the representations made by defendants in reference to Porter; that shortly prior to October 8, 1917, defendants advised plaintiffs that Porter was not willing to go ahead with his contract, but was willing to accept a transfer of the entire interest in the property for the $100,000, and pay or secure same at once if a substantial discount were allowed him; that defendants advised plaintiffs that they thought this the best thing to do, and were willing to do so themselves; that believing such statements to be true, and relying on the same, plaintiffs consented to a modification of the contract with Porter accordingly; that these representations were so made by defendants with the intention that plaintiffs should rely thereon; that on the 8th day of October, 1917, plaintiffs, relying on the representations made by defendants, joined defendants in the execution of an assignment to Porter of the entire property; that all the payments theretofore made by Porter

under. his contract had been made to defendants, and defendants had paid plaintiffs one-half thereof, to wit, $20,000, representing their part; that shortly after the. execution of the assignment of the entire interest to Porter, defendants paid to plaintiffs the further sum of $20,000, which they informed plaintiffs was the entire balance due them under the contract with Porter, after allowing the discount demanded by Porter; that at the same time the assignments of the entire interest in the property to Porter were delivered, Porter without any consideration executed and delivered an assignment of an undivided one-half interest in all the property back to defendants; that plaintiffs never learned of this assignment back to defendants until about July 10, 1922; that defendants had, in order to induce Porter to acquiesce in this arrangement, falsely represented to Porter that plaintiffs were then willing to sell their entire interest, but that defendants desired to retain all their original one-half interest, and so that when such assignment and reassignment were made, defendants would be the owners of one-half and Porter the owner of the other one-half, as contemplated in the original proposition, and that defendants would pay plaintiffs all the purchase price which had theretofore been, or might thereafter be, paid by him; that these representations so made to Porter were unknown to plaintiffs, and were made by defendants in furtherance of their scheme to defraud plaintiffs; that plaintiffs believed that all the interests of both plaintiffs and defendants were being permanently assigned to Porter; that if defendants had not made the suggestion to Porter that plaintiffs were willing to allow a discount on the contract. he, Porter, would not have expected or asked for a discount, and would have paid the entire amount his contract called for, and but for the fraud of defendants, the entire amount thereof would have been paid to plaintiffs for their one-half interest in the property.

The petition then alleged that upon the re assignment by Porter to defendants of the one-half interest in the property, defendants thereby became trustees for the plaintiffs to the extent of one-half of the one-half interest in the property so re-assigned to them. so that plaintiffs were, in equity, the owners of an undivided one-fourth interest in the property.

It then alleged that, thereafter, defendants transferred the one-half interest thus re-assigned to them to the Midwest Royalties Corporation, and received therefor stock in said corporation of the par value of $300,-000; that they thereafter sold said stock to Porter for $150,000; that Porter paid them therefor by assigning to them an oil and gas lease covering 160 acres of land in Tulsa county, Okla., known as the Theodore J. Berryhill lease, and for which Porter had paid $150,000; that defendants thereafter transferred said Berryhill lease to third parties; that by reason of the relationship to plaintiffs, defendants were under duty to use the utmost good faith in all their dealings and transactions with plaintiffs and make full disclosure of all facts coming to their notice regarding any transactions with respect to the property.

It is then alleged that plaintiffs did not discover the fraud which had been perpetrated upon them by defendants; until on or about July 10, 1922, after which they made demand on defendants to render a full statement of all the facts concerning said property, which defendants refused to do.

It is then alleged that, by reason of the facts stated, plaintiffs are entitled to judgment against defendants in the sum of $85,-000, for which sum, with interest at six per cent. from October 8, 1917, plaintiffs prayed judgment.

The defendants filed a motion asking the court to require plaintiffs to make their petition more definite and certain in some 12 particulars; the first being to require plaintiffs to state whether the authority alleged to be given to defendants to act for plaintiffs in the matter of the sale of the property was oral or in writing. The motion was sustained as to the first ground and overruled as to all others.

Demurrer was then filed on the grounds that the petition failed to state facts sufficient to constitute a cause of action, and that said petition contained several causes of action improperly joined. The demurrer was overruled, and defendants answered by general denial, and that the action was barred by the two-year statute of limitation. Plaintiffs replied by general denial. The cause was tried to a jury, resulting in a verdict in favor of plaintiffs for $47,500 and interest thereon at 6 per cent. from October 8, 1917, upon which verdict, after motion for new trial was filed and overruled, the court computed the interest and rendered judgment for $71,875.41.

Defendants bring this case here for review. After the appeal was lodged in this court,

defendant Mark E. Davis died, and the cause was revived as to defendant Davis in the name of the Exchange Trust Company, as executor of the estate of Mark E. Davis, deceased.

It is first contended under assignments 1, 4, 6, 7, 8, 9, 10, and 11, which are all presented together, that the petition does not state a cause of action.

Defendants insist that this is an action for damages based upon the proposition that plaintiffs suffered damages by reason of their being fraudulently induced to sell their interest in the lease. It is contended that if plaintiffs were induced by fraud or deceit to part with their interest in the leases, their measure of damage is the difference between the amount they received, which the petition shows to be $40,000, and the actual value of their interest at the time of the conveyance, and because the petition does not allege the value of their interest to be in excess of the sum received, the petition does not state a cause of action; that is, it fails to state facts sufficient to show that the plaintiffs were damaged. The petition does not in fact allege that plaintiffs' interest in the lease had any value. But as against the demurrer, all the allegations of the petition must be taken as true. If the petition be true, then we find that prior to September 1, 1917, plaintiffs owned an undivided interest in the oil and gas property, consisting of leases partly developed in Bourbon and Crawford counties, Kan.; that shortly prior to that date, Porter offered $100,000 for that interest; that Porter did not know plaintiffs, but knew Heggem; that the offer was made to Heggem; that Heggem had told Porter that he and Davis did not want to sell their interest; that they wanted to get plaintiffs out, and thought they would sell; that upon receipt of this offer from Porter, Heggem, instead of communicating the offer as made, falsely reported the offer to plaintiffs as made for an undivided one-half interest; that plaintiffs had theretofore informed defendants that they, plaintiffs, would be guided wholly by defendants in the matter of handling the property, whether to develop or sell; that defendants at that point conceived a plan and scheme whereby they determined to defraud plaintiffs, and how they proceeded to carry out the scheme is pleaded in great detail, as shown in the statement of the substance of the petition. It is shown that defendants, by false statements and representations to plaintiffs on the one hand and

Porter on the other, succeeded in so manipulating the trade that when the plaintiffs thought the matter wholly disposed of, plaintiffs had assigned all the interest for which Porter had offered and stood ready, willing and able to pay the sum of $100,000, and had received therefor but $40,000, while defendants had received the sum of $30,000, and still retained their one-half interest in the property. The petition then further details how defendants afterwards disposed of this one-half interest. But in considering whether the petition stated a cause of action, this latter part thereof may be disregarded. Section 5086, C. O. S. 1921, provides:

"One who wilfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers"

—and section 5087, defining "deceit," is as follows:

"A deceit, within the meaning of the last section, is either:

"First. The suggestion, as a fact, of that which is not true by one who does not believe it to be true.

"Second. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true.

"Third. The suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or,

"Fourth. A promise, made without any intention of performing."

The petition recites acts by defendants constituting deceit as defined by each subdivision of the section many times and in divers ways. Acts constituting deceit as above defined are very similar to acts constituting actual fraud, as defined by section 4996, C. O. S. 1921, which is as follows:

"Actual fraud, within the meaning of this chapter, consists in any of the fol'owing acts, committed by a party to the contract, or with his connivance with intent to deceive another party thereto, or to induce him to enter into the contract:

"First. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true.

"Second. The positive assertion in a manner not warranted by the information of the person making it, of that which is not true, though he believe it to be true.

"Third. The suppression of that which is true, by one having knowledge or belief of the fact.

"Fourth. A promise made without any intention of performing it; or,

"Fifth. Any other act fitted to deceive."

We think the allegations of the petition are sufficient to state a cause of action under sections 5086, 5087, C. O. S. 1921.

It is contended, however, that when the offer was made to Heggem for the interest of plaintiffs, there was no obligation on their part to carry any proposition of that kind to plaintiffs, and that the sale as made "was perfectly honorable and legitimate." If we take the alllegations of the petition as true, which we must in considering the demurrers to the petition, we could not assent to this proposition as a whole without materially altering our views on the meaning of the words "honor" and "legitimacy" in business matters.

It may be conceded, and we think it is the law, that when Porter made the offer to Heggem, neither he nor he and Davis were under any obligation, nor was it their duty as cotenants of plaintiffs, to communicate the offer to plaintiffs. But where a person volunteers to speak, the law imposes upon him, in certain circumstances, the duty to speak the truth. In Gidney v. Chapple, 26 Okla. 753, 110 Pac. 1100, it was held:

"Although a party may keep absolute silence and violate no rule of law or equity, yet, if he volunteers to speak and to convey information which may influence the conduct of the other party, he is bound to discover the who'e truth. A partial statement, then, becomes a fraudulent concealment, and even amounts to a false and fraudulent misrepresentation."

Here Heggem volunteered to speak to plaintiffs conveying information intended by him to influence, and which he knew might influence, the conduct of plaintiffs, and failed to disclose the whole truth, and according to the petition, he and Davis followed this up by a series of false statements and representations of the most reprehensib'e character, by which the results heretofore outlined were obtained. Defendants, in support their contention, cite West v. Madansky, 80 Okla. 161, 194 Pac. 439, wherein it was held:

"A fiduciary relation does not arise in law between tenants in common merely because of such common ownership, but when one of the tenants in common is created an agent for all the others for the express purpose of disposing of the interest of said tenants in common, and an assignment of the interest of said parties is made to said agent, in trust, in order to enable him to make an advantageous sale, then the law raises a trust relationship between such parties and such agent, and enjoins upon him the duty to act toward such parties, whose interests he holds in trust, with the utmost honesty and good faith."

The fiduciary relation, or relation of trust and confidence, alleged in the petition, is not alleged to have existed merely because of the common ownership, but it will be observed that the petition alleges that plaintiffs had informed defendants that they, the plaintiffs, were willing to do with their interests anything that defendants were willing to do with their similar interest, and would be controlled in all their actions with reference to the management and sale of the property by the advice of the defendants, and that defendants knew and realized that plaintiffs reposed absolute confidence in the statements and representations of the defendants to deal fairly and to the best interest of all concerned, and believed all the representations made by defendants in reference to Porter; that all of the negotiations for the sale of said property to Porter were conducted exclusively by defendants for themselves and plaintiffs, and duly authorized so to do by plaintiffs. We think these allegations sufficiently alleged a relation of trust and confidence (if not a relation of principal and agent), and a relation which enjoined upon defendants the duty to act with common honesty and good faith, at least. Defendants also cite Goldberg v. Getz (Cal.) 163 Pac. 221, wherein it was held:

"A tenant in common, while ordinarily sustaining a quasi confidential relation toward his cotenants, with reference to the common property, so that his action in dealing therewith, to the benefit of the property, will inure to the benefit of all, is not prevented from selling his interest in the property without consulting his cotenant and for any price obtainable, and therefore an agreement by purchaser to pay one cotenant more for his interest than was paid to the other is not void, even if not known to the other cotenant."

And, also. Harris v. Lloyd (Mont.) 28 Pac. 736, wherein it was said:

"In the absence of a special contract, there is no relation of trust between tenants in common of mining property, who are partners merely in the working thereof, which prevents one of them, when selling the property, from receiving a higher price for his interest than is paid the others."

The facts in those cases are entirely different from those pleaded here, and we

think the rule announced therein has no application to the instant case.

As against a general demurrer, we think the petition good. The proposition that the petition contains several causes of action improperly joined is not urged in the briefs. It was not error to overrule the demurrers to the petition.

Assignments Nos. 12, 13, 14, and 15 are based on alleged errors of the court in giving instructions Nos. 3, 4, 16 and 17. Instruction No. 3 told the jury in substance that one who willfully deceives another with intent to induce him to alter his position to his injury, is liable for any damages such other suffers thereby, and if the jury should believe from a preponderance of the evidence that defendants willfully deceived plaintiffs with intent to induce them to alter their position to their injury, and that plaintiffs did alter their position to their injury, and that, but for such deception or deceptions, the plaintiffs would not have done so, then plaintiffs would be entitled to recover according to the rules given by the court. The instruction then defined "deceit" as it is defined in section 5087, supra, and told the jury that the word "willful," as used in the instruction, implies not only knowledge of the thing, but a determination with bad intent to do it or to omit doing it. This instruction correctly stated the law applicable to the pleadings and the evidence. Defendants do not point out in their brief wherein the same is erroneous, and do not cite any authorities so holding.

Instruction No. 4 was as follows:

"You are instructed that whenever there exists between parties confidence on the one hand and influence on the other, from whatever cause they may spring, the law requires in all dealings between them, the highest degree of good faith on the part of him in whom the confidence is reposed.

"Good faith on the part of him in whom the confidence is reposed would require such person to refrain from suggesting, as a fact, that which is not true, when he does not believe it to be true; and would require him to refrain from asserting, as a fact, that which is not true, when he had no reasonable grounds for believing it to be true; and would require such person to refrain from suppressing any fact coming to the knowledge or attention of the person in whom such confidence was reposed and which such person knew would materially influence the conduct of the person reposing the confidence."

We see no substantial error in this in-struction. It is contended, however, that there is no allegation or proof of the relation of confidence and influence, and that for this reason the instruction was erroneous. As heretofore pointed out, we think the petition sufficiently pleaded the relation. There was abundant evidence, if believed by the jury, to sustain the allegations. There was no error in giving this instruction.

By instruction No. 16, the jury was told, in substance, that if they found from a preponderance of the evidence, and in accordance with the instructions given, that plaintiffs were entitled to a verdict, plaintiffs would be entitled to recover such sum of money by way of damages as would compensate them for the actual damages shown by a preponderance of the evidence to have been sustained by plaintiffs by reason of the acts or omissions of defendants complained of, not to exceed the sum of $85,000.

Defendants complain of this instruction because it permitted the jury to find a verdict for $85,000, when the evidence is wholly insufficient to support such a verdict. There is evidence in the record tending to support every material allegation in plaintiffs' petition, and which, if believed by the jury, was sufficient to show that plaintiffs were entitled to recover a minimum of $60,000. The evidence of plaintiffs shows that they, on and prior to September 1, 1917, owned an undivided one-half interest in property for which Porter stood ready, willing, and able to pay them $100,000; that Heggem had represented to Porter that this interest was worth $150,000, and that he and Davis did not want to sell their similar interest, or any part thereof, but that they would like to get plaintiffs out and get Porter in as a partner; that Porter made an offer to Heggem of $100,000 for plaintiffs' interest, and asked him to convey that offer to plaintiffs, and report back to him; that this offer was not truthfully conveyed to plaintiffs, and that by various and divers false statements and representations, both to plaintiffs and Porter, defendants so handled and manipulated the trade, and received the sum of $30,000, and still retained their one-half interest; that plaintiffs, by the deceit and duplicity of defendants, were deprived of the opportunity to sell their property, for $100,000, without regard to the actual value thereof, and for which sum defendants knew plaintiffs would sell, and induced them to accept therefor the sum of $40,000, while defendants were receiving the sum of $30,000 out of plaintiffs' one-half interest.

Then, if the evidence of plaintiffs be true (and it must have been believed by the jury, otherwise, the jury could not, under the instructions given, have found for plaintiffs in any sum), the plaintiffs were entitled to recover not less than $60,000. Under the instructions given, the jury might have returned a verdict for a larger sum than the maximum amount which plaintiffs, under their evidence, if true, were entitled to recover. Does it follow that the giving of this instruction was such error as to require a reversal? We do not think so.

In St. Louis, I. M. & S. Ry. Co. v. Marlin, 33 Okla. 510, 128 Pac. 108, it was held that:

"Errors committed by a court on a trial, which cause no prejudice, will not require a reversal of the judgment on appeal."

The court, in the body of the opinion, said:

"On the issue of the measure of damages, the amount prayed for by plaintiff was $608. The verdict of the jury was $224.20. Our statute (Comp. Laws 1909, sec. 2907) provides that the measure of damages for tort is such as will compensate fully for the detriment proximately caused thereby. There is some difference in the holding of the courts as to the proper manner of establishing such damages as were inflicted in this case; but plaintiff's witnesses testified to facts showing damages far in excess of the amount allowed by the jury. * * *

"Under these circumstances, even though one of the methods followed was erroneous, defendant was not injured thereby, as the verdict returned was much less than the proof would sustain under either."

In McCoy v. Wosika, 75 Okla. 3, 180 Pac. 967, it was held:

"The evidence in this case shows that the plaintiffs recovered less than they were entitled to, whether the action be considered one for conversion or for damages for wrongful eviction, and the defendants could not have been prejudiced by any error in the instructions: for it has frequently been held by this court that, where the plaintiff was entitled to recover a sum equal to that awarded under any theory of the law, the judgment in his favor will not be reversed for alleged error in defining the measure of damages in the court's instructions to the jury."

In so far as it allowed a recovery of less than the plaintiffs were entitled to under their pleadings and evidence, the instruction complained of was more favorable to defendants than they were entitled to. In 4 C. J. 918, it is said:

"In applying the general rule heretofore stated, it is uniformly held that appellant cannot complain of error in instructions where such error operates in his favor."

Then, assuming that the instruction given was wrong, in that it permitted the jury to return a verdict for more than plaintiffs were entitled to under their pleadings and evidence, defendants were not harmed thereby, for the reason that the verdict returned by the jury was $12,500 less than the plaintiffs were entitled to if the jury believed plaintiffs' evidence in preference to that of defendants. As stated before, the jury must have believed plaintiffs' evidence and refused to believe that of defendants, otherwise the verdict would have of necessity been for the defendants.

In 4 C. J. 908, the rule with reference to harmless error is stated as follows:

"It is a rule of appellate procedure of universal application that a party cannot assign as error that which is not prejudicial to him. In every stage of action, the reviewing court must disregard error which does not affect the substantial rights of the party complaining."

"Appellate courts, it is said, have inherent power to decide that an error was harmless, and to refuse to disturb a judgment because of it when they believe that a proper judgment has been rendered."

Had the jury returned a verdict in favor of plaintiffs for more than $60,000, defendants might have cause to complain of the instruction, but since the verdict was for less than the minimum amount plaintiffs were entitled to recover under the evidence, we think the error, if any, in giving the instruction was harmless, and defendants could not have been prejudiced thereby.

It is contended that the court erred in admitting evidence as to the offer of Porter to defendants that he would pay $100,000 for the one-half interest of plaintiffs. It is argued that even if Porter did tell Heggem that he would pay that sum for plaintiffs' one-half interest, Heggem was under no obligation to submit that proposition, and had a perfectly good right to put in with plaintiffs so that the four of them were selling one-half interest instead of plaintiffs' selling all their one-half.

We have already said that Heggem was under no obligation to submit the offer, but that having volunteered so to do, it was his duty to speak truthfully. Had he done so, the situation would probably not have arisen as it did. According to the record, this was only the beginning of the deceitful and false

representations of defendants, and a comparatively small part of the treachery employed by them. We think there was no error in admitting this evidence.

There being no reversible error in the record, the judgment should be affirmed.

BENNETT, HERR, LEACH, and JEFFREY, Commissioners, concur.

By the Court: It is so ordered.