The ATCHISON, TOPEKA AND SANTA FE
RAILWAY COMPANY, a Corporation,
Plaintiff in Error,

v.

Wayne COULSON, Guardian of the Person
and Estate of Jared Phillip Lott, a Minor,
Defendant in Error.

No. 39202.

Supreme Court of Oklahoma.

Jan. 9, 1962.

Rehearing Denied June 5, 1962.

Rainey, Flynn & Welch, Oklahoma City, for plaintiff in error.

Jack B. Sellers, Drumright, Collins & Moore, Sapulpa, Leon J. York, Stillwater, by Everett S. Collins, Sapulpa, for defendant in error.

JACKSON, Justice.

In this case the plaintiff, Wayne Coulson as guardian of Jared Phillip Lott, sued the defendant, Atchison, Topeka and Santa Fe Railway Company, for damages for injuries allegedly sustained by Jared Phillip Lott while crossing a railroad overpass constructed and maintained by the Company north of Glencoe, Oklahoma. The parties will be given their trial court designations.

The evidence tends to show that on August 8, 1949, Jared was riding in an automobile over the overpass, and when the vehicle left the dirt portion of the approach to go upon the wooden portion of the overpass, the automobile lurched upward, because of the rough condition at this juncture, and Jared was thrown against the top of the automobile with such force that he was rendered unconscious for a period of about twelve hours. Jared, then about five years of age, was taken to a hospital in Tulsa, Oklahoma, where he received treatment for two or three weeks.

The evidence shows that Jared began having headaches and convulsive seizures in 1957 and this action was filed in 1959. Plaintiff's medical evidence is to the effect that Jared is afflicted with "post-traumatic" epilepsy, and that this condition will continue as long as he lives, with attendant periodic epileptic seizures.

From a verdict and judgment for plaintiff the defendant has appealed.

Plaintiff pleaded and tried the case upon the theory that the defendant failed to maintain the overpass in a reasonably safe condition as required by the provisions of 66 O.S.1951 §§ 123 and 128, and that such failure and violation of the cited sections by the defendant constituted negligence *per se*. In this connection the plaintiff offered evidence to show that the dirt had eroded away some six or eight inches at its juncture with the wooden portion of the overpass, and that during the summer (July and August) of 1949 the overpass "was chronically in misrepair or rough", and "it was always rough".

The defendant offered evidence to show that the overpass was in a reasonable state of repair and took the position in the trial court, and here, that a failure to maintain the overpass in a reasonably safe condition, as required by the cited sections of the statute would not constitute negligence *per se* but that it was incumbent upon plaintiff to allege in his petition, and prove, that the defendant had either actual or constructive notice of any defective condition of the overpass.

■ In developing its argument the defendant complains in its first proposition that the court erred in overruling its motion for judgment on the pleadings for the reason that plaintiff did not allege in his petition that defendant had actual or constructive notice of the defective condition of the overpass. However, defendant did not file a demurrer to plaintiff's petition.

In the second paragraph of the syllabus in Good v. First National Bank of Roff, 88 Okl. 110, 211 P. 1051, 1052, this court held:

"The rendering of judgment upon the pleadings upon motion is not favored by the courts. A motion for judgment on the pleadings should only be sustained where no cause of action or defense is stated and such pleading is not susceptible of amendment."

The reason for the rule is stated in the body of the opinion in Owens v. Moraine, 105 Okl. 285, 232 P. 818, 821, as follows:

"* * * When a demurrer to a petition is sustained the plaintiff has a right to amend. * * *. The effect of the motion for judgment on the pleading, when sustained, is to deprive the party of the right of amendment.

*       *       *       *       *       *

"* * * This court will not affirm a judgment rendered on a motion for judgment on the pleadings, because of insufficient allegations in any pleading, unless it clearly appears that the pleading could not have been amended, or

the party elected to stand on the pleading as filed."

Since the petition in the instant case was "susceptible of amendment", the trial court did not err in overruling the motion for judgment on the pleadings.

Defendant also contends in its first proposition that the court erred in overruling defendant's demurrer to plaintiff's evidence, its motion for a directed verdict, and its motion for judgment notwithstanding the verdict. Again the particular argument is that plaintiff had the burden of proving actual or constructive notice to defendant, and did not do so.

■ From a careful consideration of the entire record before us, it appears that the defective condition of the overpass was the result of normal and routine wear and tear over a period of time. There is no suggestion anywhere in the evidence, or by inference, that it resulted from abnormal conditions, or abnormal use. Such being the case, the evidence justifies the conclusion that the defect had existed long enough to charge the defendant railroad company with constructive notice thereof.

Armstrong v. City of Tulsa, 102 Okl. 49, 226 P. 560, 561, cited by defendant, states a rule that is helpful here from the standpoint of reason and logic:

"A municipality is charged with the duty of maintaining its streets in a reasonably safe condition for travel. This duty involves the anticipation of defects that are the natural and ordinary result of use and climatic influences, and the municipality may be charged with constructive notice of the existence of such defects by reason of its failure to so anticipate them. * * *"

The evidence presented here strongly suggests that defendant had constructive notice of the condition of the overpass.

■ In its propositions two and three, argued together, the defendant complains that the trial court erred in instructing the jury that the defendant had the duty to

maintain the approaches to the overpass in good condition for the use of the public and that a breach of that duty would constitute negligence *per se;* and in refusing defendant's requested instructions that before plaintiff could recover it was incumbent upon plaintiff to prove that defendant had actual or constructive notice of the defective condition; and also that the court erred in instructing the jury as to the degree of care required of defendant under the circumstances.

In instructions 3 and 4, the court quoted 66 O.S.1951 § 123, and a part of 66 O.S. 1951 § 128. These sections of the statutes place upon railroad companies the duty to "maintain and keep in good repair all bridges" over public crossings "with their abutments", and to "maintain" public crossings "in good condition for the use of the public".

■ Defendant does not deny that these sections are applicable, but argues that the court's further instruction to the general effect that a violation of these sections is negligence *per se*, was error, and that such error had the effect of placing too high a degree of care upon defendant.

We do not believe these instructions had that effect, for the reason set out below.

In an appropriate instruction, the trial court correctly defined the term "ordinary care". He then gave the instructions setting out the statutory requirements of 66 O.S.1951, §§ 123 and 128, and the "negligence *per se*" instruction. The "negligence *per se*" instruction did not, in terms, specify any particular degree of care on the part of defendant herein. Thereafter, the court instructed the jury that under the statutes referred to, defendant was not required to keep the public crossing or bridge *absolutely safe,* and that a *"reasonably safe condition"* was sufficient to comply with the terms of the statutes. We think that the instructions in this case taken as a whole, and particularly the ones noted in this paragraph, had the effect of substantially informing the jury that the duty

of care required of defendant here was only ordinary care.

In concluding that we should not reverse because of the instruction on "negligence *per se*", and the failure to instruct that the burden was upon plaintiff to prove that the defendant had actual or constructive notice of the defective condition, we have done so upon the peculiar facts in this case. If the crossing was not maintained in a reasonably safe condition as was apparently found by the jury, then all of the elements of negligence appear to be established in this case, including constructive notice. As heretofore noted all of the evidence in this case indicates that the condition of the overpass resulted from normal wear and tear. It was the duty of the defendant to take notice of ordinary wear and tear and defects normally resulting therefrom. Armstrong v. City of Tulsa, supra. We find no prejudice resulting from the instructions given and the instructions refused and under such circumstances will not reverse. Heggem et al. v. Kilpatrick et al., 133 Okl. 145, 271 P. 643.

■ Defendant's fourth proposition is that the court erred in refusing to grant defendant a continuance on its several applications during the course of the trial. This contention arises by reason of the facts hereinafter shown.

Prior to trial, defendant took the deposition of the curator of records at the Tulsa hospital where Jared was confined for 17 days in 1949, immediately after the accident. After the curator had identified herself and explained her duties in the hospital, she was asked about the hospital records concerning Jared Phillip Lott. At this point, plaintiff's attorney asserted "the privilege against the revealing of the personal medical records of the patient Jared Phillip Lott". As a result of this, and later suggestions by plaintiff's attorney, she called a hospital official who apparently instructed her not to reveal any records or information, and she refused to do so.

Immediately prior to trial, defendant presented to the court a motion for continuance reciting inability to procure material evidence consisting of the hospital records. The accompanying affidavit recited that defendant expected to prove thereby that Jared, at the time of the 1949 hospital confinement, was treated for a condition or disease other than epilepsy. This motion was overruled and no error is alleged in connection therewith, since at that time there had been no waiver by the plaintiff as to the competency of the evidence concerned.

During the course of plaintiff's case-in-chief, plaintiff presented as a witness Dr. S, who had treated Jared in the Tulsa hospital in 1949, and had also treated him in 1958 after he had started having convulsive seizures. Dr. S testified in response to a question which was in part hypothetical and in part based upon his observation and treatment of the boy, that Jared was suffering from post-traumatic epilepsy caused by the accident in 1949. Thereafter he was cross examined by defendant's counsel and testified that encephalitis "was one of the diagnoses that was considered" and that "We treated him essentially as a case of possible encephalitis at the time he was at St. John's". He also testified that during his treatment of Jared in 1949 he was given no history of traumatic injury. In this connection, Jared's mother had testified that immediately after the accident she first took Jared to Dr. R in Pawnee, and that she told him "what happened". After Dr. R made an effort to "bring him to", Jared was taken directly to the Tulsa hospital.

Also during cross examination of Dr. S, defendant's counsel made an offer of proof that "had it been able to obtain the records of the St. John's Hospital on the deposition of Mrs. Helen Dodson on Tuesday, March 1st, 1960—" at which point plaintiff objected and the objection was sustained.

Thereafter plaintiff offered the testimony of other witnesses and rested. Defendant's demurrer to the evidence was over-ruled, after which defendant began its case-in-chief by offering the deposition of the curator of records of the hospital, which was refused admission in evidence. At that time defendant renewed its motion for continuance for the purpose of obtaining the hospital records. The motion was overruled by the court, with remarks indicating that his reason for so doing was that "I don't know what probative value, if any * * *" the records might have.

During discussion preceding the overruling of the motion, it developed that Jared had voluntarily submitted to examination by Dr. I, a physician selected by the defendant, and that Dr. I had seen the hospital records.

Thereafter defendant completed its case-in-chief, certain rebuttal testimony was offered, and both sides rested.

Defendant did not offer the testimony of Dr. I.

In other portions of the record, defendant's counsel consistently referred to the hospital records as "impeaching and rebuttal" evidence, and indicated that he wanted them for the purpose of impeaching Dr. S, apparently on the grounds that in 1949 Dr. S thought the boy had encephalitis and had been given no history of traumatic injury. This was of course admitted by the doctor, as shown above. Thereafter plaintiff's medical witnesses described tests later made which clinically indicated traumatic epilepsy instead of encephalitis.

In support of its argument that the court erred in refusing to grant the continuance, defendant cites Slusser v. Daniel, 86 Okl. 116, 206 P. 827, to the general effect that the granting or refusal of a continuance is within the discretion of the trial court; and Hudman v. State, 89 Okl.Cr. 160, 205 P.2d 1175; Roeser v. Pease, 37 Okl. 222, 131 P. 534, and other cases, to the general effect that a party may waive his claim of privilege in connection with medical records. In the case before us, the trial court was of the opinion that the claim of priv-

ilege had been waived, and plaintiff does not seriously deny such in his brief.

■ However, the basic question here is not whether the claim of privilege had been waived, but whether the court erred in refusing to grant a continuance. Assuming there had been a waiver, there was evidence and information before the court justifying his opinion that the hospital records would have little probative value, since they were wanted for use in impeaching Dr. S by showing that he first thought the boy had encephalitis and that he had been given no history of traumatic injury, and this was freely admitted by the doctor. It is not an abuse of discretion for the trial court to refuse a continuance where the continuance is asked for the purpose of procuring evidence which is only of an impeaching nature. Johnston v. Shaffer, 96 Okl. 236, 221 P. 748. We hold that under the circumstances herein shown the trial court was justified in refusing to grant the continuance, and that no abuse of discretion was shown. Such being the case, no error was committed. Jones v. Novotny, Okl., 352 P.2d 905.

■ Defendant's fifth and sixth propositions are argued together, and they are that the court erred in an instruction authorizing the jury to consider the loss of future earnings, after reaching the age of 21 years, and the loss of earning capacity; and that the "trial court erred in awarding excessive damages".

With regard to the loss of earnings and earning capacity, defendant cites Lone Star Gas Co. v. Parsons, 159 Okl. 52, 14 P. 2d 369. A reading of that case discloses that the reason for this court's holding was that there was insufficient evidence that the injuries concerned would result in loss of earnings or earning capacity. Such is not the case here, where there is uncontradicted evidence that Jared will have epilepsy as long as he lives, with attendant periodic convulsive seizures. Defendant also cites Hembree Chevrolet v. Southard, Okl., 339 P.2d 771, which was an action for damages in which this court ordered a re-

mittitur as a condition of affirmance. That case is not authority for the proposition that loss of earnings and earning capacity is not a proper item for the jury's consideration in the case now before us.

Neither is the Hembree case authority for the proposition that the damages awarded here are excessive. In the case before us it was shown that Jared will be an epileptic as long as he lives, with convulsive seizures once or twice a month. It was also shown that under the provisions of 47 O.S.1951 § 276(7), Jared will be unable to acquire a driver's license in Oklahoma as long as he is afflicted with epilepsy. These conditions will restrict him in his employment and the ability to secure employment.

The only other authority cited by defendant in support of these propositions is Atchison, Topeka and Santa Fe Ry. Co. v. Messmore, Okl., 339 P.2d 779, 783, to the general effect that "Where the verdict clearly appears to be excessive, as a result of an erroneous instruction duly excepted to", the judgment may be reversed or modified by this court under proper circumstances. Here, we cannot say that the verdict "clearly appears to be excessive"; and the instructions complained of were not erroneous. Defendant's argument under these propositions is therefore without merit.

■ In its seventh proposition, defendant argues that the court erred in "refusing to allow defendant to refer to matters in evidence on closing argument", and reference is made in the brief to two occasions during closing argument. On the first occasion, after plaintiff's counsel had objected to a certain line of argument, the court said " * * * Go ahead". This amounted to an overruling of the objection, and defendant has no cause for complaint.

On the second occasion, defense counsel had started to tell the jury what "we would have found out" if plaintiff had produced the hospital records. Plaintiff objected to the statement "as being wholly outside the record", and the objection was sustained

upon that ground. This ruling was proper; see 53 Am.Jur. Trial, Sec. 480; 88 C.J.S Trial § 181. It did not prevent defendant's counsel from making reference to plaintiff's failure to produce the hospital records. As a matter of fact, later in his argument counsel took full advantage of the situation when he said:

"* * * Now, don't you think that if they thought he had epilepsy at the time he was confined in that hospital that they would have released him and not made some effort to control it. *They knew he didn't have epilepsy, they knew it was somethng else.* * * *" (Emphasis supplied.)

We hold that defendant was not unduly restricted in its closing argument.

The judgment of the trial court is affirmed.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and JOHNSON and IRWIN, JJ., concur.