Argued March 20, reversed and remanded April 3, rehearing denied May 1, 1917.

## ROBINSON v. PHEGLEY.

(163 Pac. 1166.)

**Fraud—Misrepresentation—Materiality.**

1. Where plaintiff, to protect her interest in a corporation, purchased defendant's claims against the company and thereby became owner of its property sold at foreclosure sale, the contract will not be rescinded because of defendant's false representations as to amount of his claims, since plaintiff obtained what she sought; the representations consequently being immaterial.

**Fraud—Misrepresentation—Recovery of Excess Payment—Reformation of Contract.**

2. Where plaintiff agrees to purchase defendant's claims against a corporation, paying him therefor the amount of his expenditures for the benefit of the corporation, and defendant misrepresents the amount of such expenditures and plaintiff is thereby induced to pay plaintiff $6,000 in excess of such disbursements, plaintiff on discovery of the fraud is entitled to reform the contract of purchase and recover the $6,000 so paid with interest. Plaintiff's right to recover will not be barred by a judgment recovered by defendant against the corporation corresponding in amount with defendant's representations or by plaintiff's purchase of the corporate property at a sale had under such judgment.

**Corporations—Stockholder's Rights—Showing Fraudulent Judgment Against Corporation.**

3. A stockholder, when confronted with a judgment against the corporation may defeat its effect by showing that it was fraudulently

and collusively secured, although ordinarily stockholders are bound by a judgment against their corporation.

**Limitation of Actions—Computation of Period—Discovery of Fraud.**

4. Where plaintiff, within a reasonable time after learning of defendant's misrepresentations inducing purchase of claims against corporation, brought suit against him, it was immaterial that suit was not commenced within the six-year statute of limitations, since it is the general rule that statute of limitations will not run during the interval when the party was ignorant of the fraud.

[As to fraud at law as preventing operation of the statute of limitations, see note in 60 **Am. Dec.** 511.]

From Multnomah: GEORGE N. DAVIS, Judge.

Emma G. Robinson commenced this suit against Grant Phegley and from a decree rendered in favor of defendant dismissing the suit on demurrer, the plaintiff appeals. Reversed with directions.

In Banc. Statement by MR. JUSTICE MCCAMANT.

This is a suit brought to rescind two contracts entered into between the parties in the year 1907, under which plaintiff alleges that she paid the defendant $9,600. The suit is brought for the recovery of this sum and certain other damages which plaintiff claims she sustained. The case was tried in the lower court on demurrer to the third amended complaint. The demurrer was sustained and thereupon a decree was entered dismissing the complaint. From this decree plaintiff prosecutes an appeal.

REVERSED AND REMANDED WITH DIRECTIONS.

For appellant there was a brief over the names of *Mr. Roscoe C. Nelson* and *Messrs. Beach & Simon,* with an oral argument by *Mr. Nelson.*

For respondent there was a brief with oral arguments by *Mr. Ralph A. Conn* and *Mr. C. A. Sheppard.*

Mr. JUSTICE McCAMANT delivered the opinion of the court.

The sole question raised by this appeal is the sufficiency of the third amended complaint to which the lower court sustained a demurrer. This complaint alleges that in the year 1907 Galice Consolidated Mines Company was an Oregon corporation owning valuable mining property situate in the State of Oregon, and that plaintiff was a stockholder who had invested $15,000, presumably in the purchase of stock. It is alleged that the defendant represented to plaintiff that he was the owner of valid claims against the corporation for "moneys actually paid, laid out and expended by him" for the corporation, aggregating $9,600; that one of the items making up the said sum of $9,600 was a claim for $6,000 secured by mortgage on the properties of the corporation; that plaintiff, having invested a large sum of money in the stock of the corporation which she desired to protect, was induced by the representations of the defendant to purchase a one-half interest in his claims, paying him therefor $4,800 on June 11, 1907, and was further induced to purchase the other half of said claims on October 19, 1907, paying the defendant the additional sum of $4,800 therefor. The $6,000 mortgage had been foreclosed by decree of the Circuit Court for Josephine County at the time when the first contract was entered into and four days thereafter the property was sold under the decree. It is inferable from the complaint that plaintiff became the owner of the title to the property acquired by this foreclosure sale, and that her title has never at any time been disturbed. The property had been pooled with other properties in the neighborhood prior to plaintiff's purchase, and

plaintiff assumed the burdens of a contract which had been entered into with these other parties under which she claims to have expended large sums of money. She also claims to have done the assessment work on the mineral claims and to have expended $24,000 for such purpose.

The ground for relief alleged in the complaint is that the $6,000 mortgage represented no real indebtedness subsisting between the corporation and the defendant; that the mortgage had been given originally to secure the defendant from liability on a certain undertaking on appeal which he had executed at the instance of the corporation; that all liability on this undertaking had terminated before the first contract between the plaintiff and the defendant; and that the decree for the foreclosure of the mortgage was secured by collusion with the officers of the corporation and with intent to defraud plaintiff.

Plaintiff alleges that she purchased the claims of defendant in reliance on the representations made to her and in ignorance of the facts as she now alleges them to be. She asks for a rescission of the entire contract and for a recovery from the defendant of all sums of money paid him or expended on the property by her. She alleges that she remained in ignorance of the facts and without suspicion thereof until a few months prior to the bringing of this suit. Immediately on ascertaining the facts she demanded restitution from the defendant and alleges that some of the delay in bringing the suit was due to the time allowed to defendant to consider her claim for restitution.

The demurrer attacked the complaint for insufficiency of facts and also on the ground that the suit was not brought within six years after the accrual of plaintiff's cause of suit.

In so far as the plaintiff seeks to rescind the entire contract and to recover damages in·excess of $6,000 we think the court did not err in holding the complaint to be insufficient. It was plainly contemplated by the parties when they had the dealings in 1907 that plaintiff should become the owner of the property of the corporation through the foreclosure sale. She did become such owner and there is no allegation that her title has ever been attacked, either by the corporation or any other stockholder therein. It is well settled that fraudulent representations will not justify the rescission of a contract unless the representations be material. This principle is well illustrated by the case of *Bartlett* v. *Blaine,* 83 Ill. 25, 27 (25 Am. Rep. 346). Plaintiff in this case was induced to sign a composition requested by an insolvent debtor from all of his creditors. It was represented to plaintiff that no one had received or would receive any other compensation than the fifty per cent dividend on the claims of the creditors, which were protected by the composition agreement. Plaintiff alleged that this representation was false in that another creditor had been given a note for $500 to induce his signature. The court held that the fraudulent representation was immaterial and gave plaintiff no cause of action.

In the·Illinois case, as in this case, a false representation was made with intent to deceive and the belief of the plaintiff in its truth was a motive inducing the contract; but in the Illinois case the creditor secured all that it could have secured if the representation had been true and in this case plaintiff secured the property of the corporation and stood to secure nothing more if the fact had been as represented.

"Where the vendor and vendee are dealing at arm's length with each other, the representations of the

former as to the cost of his property, even though false and made with a view to deceive, will furnish no ground of action'': *Hank* v. *Brownell,* 120 Ill. 161, 163.

To the same effect are: *Banta* v. *Palmer,* 47 Ill. 99; *Holbrook* v. *Conner,* 60 Me. 578, 581–583 (11 Am. Rep. 212); *Bishop* v. *Small,* 63 Me. 12; *Hemmer* v. *Cooper,* 8 Allen (90 Mass.), 334.

It is not enough that the misrepresentation of a vendor furnishes the vendee with a motive to buy. Such a representation is collateral rather than material.

The material portion of the defendant's representations related to the impending judicial sale of the corporate properties and the consequent danger that plaintiff's stock would be wiped out. In these respects the representations were true. The sale did take place and the purchaser at the sale became the owner of the properties of the corporation.

It is true that the complaint alleges that plaintiff would not have entered into the contract for the purchase of defendant's claims but for the false representations which were made to her. But the complaint shows affirmatively that there were valid claims against the corporation to the extent of $3,600, owned by the defendant, and additional claims in excess of $5,000, on which other creditors had secured judgment against the corporation. The manifest purpose of plaintiff was to acquire title to the property of the corporation and thus preclude the loss of a large sum of money which she had already invested. There is no allegation that she was deceived as to the character of the properties or that any misrepresentation was made to her about them. She got what the parties contemplated that she should get, and she could have got no more if the representation had been true. Therefore she is not entitled to a rescission.

'As regards her right to recover the $6,000 paid in the purchase of the defendant's mortgage, which represented no debt and which was collusively foreclosed, the case stands on a somewhat different footing. It is alleged that plaintiff agreed to pay the defendant "the sums actually paid, laid out and expended by the defendant for and on behalf of the said corporation." This allegation is borne out by the written contract entered into by the parties on June 11, 1907, which is attached as an exhibit to the complaint. It contains the following clause:

"In consideration of the foregoing, the said party of the first part does hereby agree to pay to said party of the second part one half of the amount of his claim against said company at the present time, including one half the money expended by him in the care of said property, amounting in all to ninety-six hundred dollars."

It appears therefore that the agreement on which the minds of the parties met was that plaintiff should pay the defendant just what the defendant had expended on behalf of the corporation. Plaintiff contracted to pay one half of this sum in the first contract, and the other half thereof in the second contract with the defendant. It is now alleged in effect that although the defendant had in fact paid out for the benefit of the corporation only $3,600, he alleged that he had paid $9,600, and by this false representation he induced plaintiff to pay $6,000 in excess of what the agreement between the parties contemplated. We think the allegations of the complaint can be upheld as stating a cause of suit for the reformation of the contract in this respect, and for the recovery by plaintiff of $6,000 with interest.

The defendant strenuously contends that the decree of foreclosure standing unreversed is a bar to the litigation of plaintiff's claim. This decree was rendered in a suit to which plaintiff was not a party. It is said that she was a stockholder of the corporation and is therefore bound by the decree. The case at bar was not brought by plaintiff as a stockholder, although her complaint contains an allegation that she was such stockholder. The cause of suit alleged is based upon her claim arising out of the contracts of June 11, 1907, and October 19, 1907. Her ownership of stock is alleged as a motive for entering into these agreements.

Furthermore, the great weight of authority sustains plaintiff's contention that a stockholder in a corporation when confronted with a judgment against the corporation may defeat its force and effect by showing that it was fraudulently and collusively secured. The authorities hold that this contention may be asserted by a stockholder without obtaining a decree setting aside such fraudulent judgment. We think the law in this jurisdiction is settled by *Saylor* v. *Commonwealth Banking Co.*, 38 Or. 204, 209 (62 Pac. 652, 654). In this case a judgment had been secured against the Commonwealth Banking Company on which it was sought to recover unpaid stock subscriptions from certain stockholders. These stockholders alleged that the judgment had been fraudulently obtained. The fraud set up involved, among other things, collusion with the officers of the corporation to permit a default judgment to be entered against their company. This court, speaking through Mr. Chief Justice BEAN, announced the familiar principle that ordinarily stockholders are bound by a judgment against their corporation. He then said:

"But, while a judgment against the corporation is binding upon and conclusive as against the stockholders in a suit to subject the unpaid balance due from them on their subscription to the capital stock to the payment thereof, yet, as appears from the foregoing quotations, the stockholder may in such a proceeding go behind the judgment, and impeach it for fraud."

"It is immaterial, as we view it, whether the attack in this case is strictly direct or collateral. The suit is instituted for the purpose of enforcing the judgment against persons who were not actually parties to the record on which it was rendered, and we cannot perceive why they should not be allowed to set up, by way of answer, as a reason why it should not be enforced against them, that it was obtained by fraud, and, especially, that it is invalid on its face."

The above case does not stand alone. It is in accord with the best considered authorities in other jurisdictions. See, for example, *Bissit* v. *Kentucky Co.* (C. C.), 15 Fed. 353; *Warrington* v. *Ball,* 90 Fed. 464 (33 C. C. A. 609); *Choate* v. *Boyd,* 59 Kan. 682 (54 Pac. 1042). See also the following text-books in which the above doctrine is announced as settled law: Cook on Corporations (7 ed.), § 848 (i), citing many cases; 4 Thompson on Corporations (2 ed.), § 4982; 2 Van Fleet on Former Adjudication, 998; 10 Cyc. 734; 7 R. C. L. 421. We are therefore of the opinion that the foreclosure decree is no bar to the recovery by plaintiff of the $6,000 if she can prove her allegations of fraud and collusion.

The demurrer challenges the sufficiency of the complaint on the ground that the suit was not brought within six years. It appears that the suit was brought within a reasonable time after the discovery of the fraud which constitutes the cause of suit. In

*Sedlak* v. *Sedlak,* 14 Or. 540, 541 (13 Pac. 452), Mr. Chief Justice LORD says:

"The general rule, without doubt, is, that no lapse of time or delay in bringing the suit will be a bar to the remedy in equity, providing the injured party, during the interval, was ignorant of the fraud."

We think the complaint is not obnoxious to objection on this ground.

The decree should be reversed and the cause remanded with instructions to overrule the demurrer.

REVERSED AND REMANDED WITH DIRECTIONS.

REHEARING DENIED.

