**BERRY et ux. v. STEVENS et al.**

No. 21876.    March 20, 1934.

Rehearing Denied April 24, 1934.

S. A. Hipps and J. W. Bashore, for plaintiffs in error.

Melton & Melton, for defendants in error.

Theodore Pruett, pro se.

Grover C. Wamsley, pro se.

PER CURIAM. This is an appeal from a judgment and decree of the district court of Caddo county, refusing the rescission and cancellation of a deed executed the 1st day of November, 1929, by the plaintiffs, David Berry and wife, to the defendants A. J. Stevens, Theodore Pruett, and Grover C. Wamsley, conveying an undivided two-fifths interest in 160 acres of land in Caddo county, Okla., to said grantees, and denying the petition of the plaintiffs and rendering judgment and decree in favor of the defendants.

It appears from the record in this case that the lands involved in this action were in a territory that was an oil-bearing territory, and this territory had been explored for oil and gas and had been producing same for a considerable length of time; that most of the lands in the vicinity of the lands in question were covered by oil and gas mining leases, and a number of small producing wells had been drilled in the vicinity; that the father of the plaintiff David Berry was the owner of 160 acres of land in Caddo county, Okla., described as the northeast quarter (N. E. ¼) of section thirty-one (31), township six (6) north, and range nine (9) west; that upon his death, the plaintiff David Berry inherited an undivided one-fifth interest in said land, and that thereafter the said David Berry had purchased another undivided one-fifth interest therein, and thereby became the owner of an undivided two-fifths interest in said tract of land; that the said David Berry had resided in the vicinity of said land for several years, and up until about 1927, when he removed to a farm near Big Cabin in Craig county, Okla., that the defendant A. J. Stevens was and had been for several years engaged in the real estate business in Caddo county, Okla., and that the said David Berry was well acquainted with him; that on or about the 29th day of October, 1929, David Berry wrote to A. J. Stevens and stated that he would like to sell his interest in this land if he could get $2,500 therefor; that Stevens received this letter on or about the 30th day of October, 1929. The record shows that immediately prior to this time, various operators for oil and gas in the vicinity of the lands had discovered a new and deeper oil-bearing sand than the oil-bearing strata which had theretofore been the source of the oil and gas; that the newly discovered oil sand was something over 3,200 feet deep, and much deeper than the old oil-bearing sand into which the former wells in the field has been sunk; that this deeper oil-bearing sand had been discovered a few months before November 1, 1929, but had produced no wells of extraordinary capacity; that the Magnolia Oil Company drilled a well within one or two miles of the plaintiffs' land into this new producing oil sand on or about the 30th or 31st day of October, 1929, which well was reported to have an initial daily production of about 1,000 barrels; that the plaintiffs had been acquainted with the older production in this field and knew of the discovery of the deeper sand, but had no particular knowledge of this new large producing well, and that Stevens, on or about the 30th or 31st day of October, 1929, made an arrangement with the defendants Pruett and Wamsley, by which Stevens, Pruett, and Wamsley agreed to purchase the plaintiffs' interest in the lands in question jointly, and that on or about the 31st day

of October, 1929, Stevens communicated with Berry by telephone, and stated that he had some parties who desired to purchase lands in northeast Oklahoma, and that he would bring these parties to the Berrys' home, and show them lands in Craig county, and that he would also discuss with Berry the purchase of his lands in Caddo county; that Stevens, in company with his son-in-law, a Mr. Roberts, started in an automobile from Hobart, Okla., at about 6 o'clock in the afternoon of October 31, 1929, and reached the home of Berry, near Big Cabin, Okla., a distance of about 270 miles about 10 o'clock in the forenoon of November 1, 1929; that Stevens and Roberts and Berry and his wife then went to Vinita, Okla.; that Stevens represented that Roberts desired to purchase lands in Craig county for his father, and that Berry and Stevens obtained information of lands for sale in that locality with a view of showing the same to Roberts; that although Roberts was the son-in-law of Stevens and was associated with him in his real estate office in Hobart, Stevens did not at any time disclose these facts to Berry, but represented that he was a prospective purchaser of lands in Craig county; that during that afternoon Stevens and Berry discussed the purchase and sale of Berry's interest in the Caddo county farm, and that during said discussion they referred generally to the oil production in the vicinity of the Berry lands in Caddo county, and Stevens made various statements about the various oil companies operating in that field and the size and production of the wells and the discovery of the new and deeper sand, but at no time did he mention the fact that the new and large oil well of the Magnolia Company had come in. Of this well, the Berrys were ignorant. Their negotiations culminated in the sale of the Berrys' interest in the lands for $2,200. Berry and his wife executed a deed to all three defendants, and received $2,200 from Stevens, and Stevens and Roberts immediately left for their home in Hobart. Some two or three days after the execution of this deed, Berry learned of the existence of the large new oil well above referred to, and without delay filed his action in the district court of Caddo county, against the three defendants herein, seeking a rescission of the contract and cancellation of the deed conveying his land to them.

The defendants deny, in separate answers, that Stevens made any false representations to Berry during the negotiations for the purchase of the land, and deny that Stevens was the agent of his other two codefendants,

but claim that pursuant to a previous arrangement, Pruett and Wamsley were to buy from Stevens a two-thirds interest in the land that he was attempting to purchase from Berry, and that Pruett and Wamsley were merely joint tenants with Stevens, and that they are innocent purchasers without notice of any fraud or misrepresentations; that while the deed conveyed the lands to all three of them jointly, they paid for their interest therein to Stevens a day or two after he returned to Hobart.

At the trial of the action in the district court of Caddo county, Okla., after the plaintiffs had introduced their evidence in support of their petition, the defendants Theodore Pruett and Grover C. Wamsley demurred to the evidence of the plaintiffs on the ground that the same was not sufficient to charge either of said defendants with any liability in the case, and this demurrer was by the court sustained. The defendant Stevens also filed a demurrer to the evidence of the plaintiffs, which was overruled. The case was tried and judgment rendered for the defendants.

Plaintiffs' motion for new trial was thereafter overruled, and this appeal is the result. The plaintiffs rely upon the following specifications of error:

"1. That said judgment is contrary to the laws of the state of Oklahoma.

"2. That said judgment is contrary to the evidence and facts in this case.

"3. That said judgment is contrary to and not supported by the evidence in this case.

"4. That said judgment is not supported by the law or the evidence.

"5. For error of law committed in the trial thereof and excepted to by the plaintiffs in error at the time thereof.

"6. For admitted evidence in the trial, which was excepted to by the plaintiffs at the time of trial.

"7. For error in sustaining the demurrer to the plaintiffs' evidence by the defendants Wamsley and Pruett, which was excepted to by the plaintiffs at the trial."

The defendants, in their brief, urge the familiar doctrine that, in an equitable action, the presumption is in favor of the finding of the trial court, and such finding will not be set aside unless clearly against the weight of the evidence, and the findings of the trial court should be strongly persuasive and should not be set aside unless the appellate court can say in equity and in good conscience that the conclusions reached

by the trial court are clearly against the weight of the evidence.

This doctrine is so well established in this jurisdiction that it requires no discussion; but this court has always reserved the right and acknowledged the duty to set aside the findings of a trial court when it appears from the record that the conclusions reached by the trial court are clearly against the weight of the evidence; and in the instant case this court feels that it can say in equity and in good conscience that the conclusions reached by the trial court are clearly against the weight of the evidence.

The defendants contend, also, in their brief that the plaintiffs in this case have not shown by the evidence that they were in possession of the land in controversy at the time of the institution of the suit, and seem to think that the plaintiffs are not entitled to the recovery sought for that reason. With this contention, we cannot agree. This is not a suit to quiet title, but a suit in equity for rescission and the cancellation of a deed, based upon the grounds of fraud, and such a suit can be maintained by one not in possession of the property involved. Hence, we do not feel that it would serve any useful purpose to discuss the numerous authorities cited by defendants in support of their contention on this point.

The record shows in this case that the plaintiffs and their relatives had resided in Caddo county, Okla., where the lands in controversy are situated, for a number of years, and that the plaintiffs were well and personally acquainted with the defendant Stevens, who was a real estate agent in that county; that about 22 months before the execution of the deed which is sought to be canceled in this action, the plaintiffs had removed from Caddo county to Craig county, Okla., and they had resided in Craig county since such removal; that Stevens knew that the plaintiffs were the owners of an undivided two-fifths interest in the land involved; that a very few days before the transaction that resulted in the execution of the deed sought to be canceled, Stevens had written to the plaintiff David Berry concerning the lands involved; that in reply to such letter the plaintiff Berry had written to Stevens concerning the sale of the land on October 29, or 30, 1929, and that Berry and Stevens had been in communication concerning the matter, both by written correspondence and by telephone; that Stevens had reported that he might be able to find a buyer for the land, and Berry had

communicated to him his willingness to sell it, and was under the impression, from such communication, that Stevens was to act as his agent in making a sale of his interest in the lands; that while Stevens pretended that he was interested mainly in having Berry to assist him in showing some prospective purchasers lands in Craig county, or northeastern Oklahoma, his real purpose in visiting the Berrys was to purchase their interest in the lands involved in this action; that the Berrys did not know who the purchasers of their lands were until the deed conveying the same was written out and presented to them for their signatures. Then, for the first time, they knew they were conveying their lands to the defendants Stevens, Wamsley, and Pruett. When the case was tried, and the plaintiffs had introduced their evidence, the trial court sustained the demurrers of the defendants Wamsley and Pruett to the evidence of the plaintiffs, and overruled the demurrer of the defendant Stevens to the evidence of the plaintiff. We think the sustaining of the demurrers filed by the defendants Wamsley and Pruett was reversible error. The defendants argue in their brief that Stevens, Pruett, and Wamsley were not partners, and, for that reason, they could not be charged with any misrepresentations or fraud on the part of Stevens, even if such existed; that where a deed conveys real estate to two or more persons, the presumption is that the estate conveyed is one in fee simple and of inheritance, and that the grantees have an undivided equal interest unless it is otherwise expressly provided in the deed, and that no presumption of partnership arises from cotenancy, and that persons may be joint owners of real estate or other property and not be partners. They cite authorities in support of their contention, and we have no fault to find with this contention, or with the authorities cited in support thereof. The record shows from the evidence of Stevens himself on this point, as follows:

"Q. When you went to Big Cabin, you went down there for the purpose of buying Berry's interest in the 160? A. I had this in view. Q. Who were you going to buy it for? A. For myself—Q. And who else? A. It was understood, if I could buy it, Mr. Pruett and Mr. Wamsley would take some interest off my hands because that was more interest than I wanted in the field. Q. When you left Anadarko to go down there, you went down to buy Berry's two-fifths interest for yourself, Pruett and Wamsley? A. It was understood, if I could buy it, they would be interested, would take two-thirds interest off my hands."

This testimony was that before Stevens went to Craig county to see Mr. Berry about this land, he had a previous agreement, or understanding, that he, Wamsley, and Pruett, would buy the land jointly. The evidence in this case, in our judgment, proves that in the purchase of this land and the taking of this deed, Stevens was acting for and on behalf of the defendants Wamsley and Pruett, as much as he was acting on his on behalf. In an Iowa case, reported in 30 A. L. R. at page 216, Rathbun v. Baumel, syllabus 4 is as follows:

"Fraud in the procurement of any written instrument vitiates it in the hands of one seeking to benefit thereby."

See 12 R. C. L. 231; 2 R. C. L. Supp. 1406; 20 R. C. L. 550; See, also, 10 A. L. R. 1474.

"Fraud destroys the validity of everything into which it enters. It vitiates the most solemn contracts, documents, and even judgments. Fraud, as it is sometimes said, vitiates every act; which statement embodies a thoroughly sound doctrine when it is properly applied to the subject-matter in controversy and to the parties thereto and in a proper forum." In re Ernst (Wis.) 30 A. L. R. 685.

"One who accepts the benefits of an act done by one assuming to be his agent thereby ratifies his act, and takes it as his own, with all its burdens as well as its benefits." Leasure v. Hughes, 72 Okla. 75, 178 P. 696.

"Except as to statements in relation to the agent's authority, in actions brought upon a contract or to rescind a contract, a disclosed or partially disclosed principal is responsible for unauthorized representations of the agent made incidental to it, if the contract is otherwise authorized, and if true representations as to the same matter are within the authority or the apparent authority of the agent, unless the other party thereto has notice that the representations are untrue and unauthorized." Restatement of the Law of Agency, sec. 162.

"A disclosed or partially disclosed principal is subject to liability upon a contract purported to be made on his account by an agent authorized to make it for the principal's benefit, although the agent acts for his own or other improper purpose, unless the other party has notice that the agent is not acting for the principal's benefit." Id., sec. 165.

"A transaction into which one is induced to enter by reliance upon untrue and material representations as to the subject-matter, made by an agent entrusted with its preliminary or final negotiations, is subject to rescission at the election of the person deceived." Id., sec. 259.

"A principal who puts an agent in a position that enables the agent, while apparently acting within his authority, to commit a fraud upon third persons, is subject to liability to such third person for the fraud." Id., sec. 261.

"Unless he has changed his position, a principal whose agent has fraudulently acquired property for him, holds it subject to the interests of the defrauded person." Id., sec. 263.

If Stevens made false representations and practiced fraud upon the Berrys in obtaining the land of the plaintiffs, and the defendants Wamsley and Pruett benefited thereby, or still retained the lands, they cannot be heard to say that they are innocent of such fraud or misrepresentations. That a person cannot enjoy the benefits of a transaction and evade the burdens thereof is a leading principle from "the manner of the Romans," and of their successors, the Normans; and the Roman and the Normans are the races that conceived and developed cosmopolitan law.

The defendants, in their brief, strongly rely upon the case of King v. Coombs, 36 Okla. 396, 122 P. 181, but an examination of the opinion will show readily that the facts in that case are entirely unlike the facts in this case, and the doctrine announced in that case cannot be applied logically to the case now under discussion. It is said in the King Case:

"Where a person knowing of lands upon which an oil and gas mining lease can be obtained, and knowing the price at which he can obtain it, offers to sell it to another at a fixed sum, which offer is accepted by the other, and he then procures the lease, the transaction is not one of agency, and the person offering the lease occupies the position of an assignor of the lease, though the lease is made direct from the landowner to the person to whom he has offered to sell it."

In the King Case, Coombs knew where he could obtain an oil and gas mining lease, and knew at what price he could obtain it. He approached King and offered to sell him the lease. Coombs' purpose was to buy the lease at a set price per acre and sell it to King at a greater price, thus making himself a profit. King offered to purchase the lease at $11 per acre, and thereupon Coombs obtained the lease, then had the lease made out directly to King. On account of failure of title, King refused to take the lease and the court said the relation of principal and agent did not exist between them.

In the case we are now considering, all the three defendants were purchasing the

Berry land jointly, and no one of the defendants was making a profit off either of the others. According to Stevens' testimony, they were to own the land equally and jointly, each owning an undivided one-third interest. In the King Case, King and Coombs were acting at arm's length at all times. Coombs was not acting as King's agent, but was selling him an oil and gas mining lease for the purpose of making a profit thereon, and there never was any contractual relation between the owner of the land, on which the lease was made, and King, the lessee, so far as the purchase of the lease was concerned. We do not think this case is applicable to the facts involved in the case at hand.

The defendants, in their brief, stoutly contend that Stevens made no false representations to Berry, and that he was guilty of no act of fraud or deceit.

" 'Confidential relation' exists between parties to a transaction wherein one of the parties is in duty bound to act with the utmost good faith for the benefit of the other party, and includes legal and all other relationship where confidence is rightfully reposed.

"In determining the existence of fraud, any evidence, direct or circumstantial, which is competent by other rules of law, and has a tendency to prove or disprove such issue, is admissible. The whole transaction involving the alleged fraud may be given in evidence.

"The gist of a fraudulent 'misrepresentation' is the producing of a false impression upon the mind of the other party, and if this result is actually accomplished, the means of accomplishing it are immaterial." Wilson v. Rentie, 124 Okla. 37, 254 P. 64.

See, also, Graves v. Mayberry, 137 Okla. 218, 278 P. 1111.

"When fraud is alleged great latitude of proof is allowed, and every fact or circumstance from which a legal inference of fraud may be drawn is admissible." Copper Process Co. v. Chicago Bonding & Ins. Co. (C. C. A.) 262 F. 66, 8 A. L. R. 1477.

See 12 R. C. L. 429.

"Fraud may be committed by suppression of truth as well as by the suggestion of falsehood." 12 R. C. L. 305; 8 A. L. R. 1477.

In this case, the most potent contention made by the plaintiffs is that Stevens, while giving plaintiffs information as to the oil field in the vicinity of the lands involved in the action, gave them only such information as they already had, at least, in part, but that he did not disclose to them the existence of the large well that had come in from the new and deeper sand just a day or two prior to the purchase of their lands, and, on this point, the record discloses that Stevens testified as follows:

"Q. Do you recall, in that conversation, that anything was said about the Magnolia well? A. No. sir, the Magnolia or the Magnolia activities were never mentioned."

"Although a party may keep absolute silence and violate no rule of law or equity, yet, if he volunteers to speak and to convey information which may influence the conduct of the other party, he is bound to discover the whole truth. A partial statement, then, becomes a fraudulent concealment, and even amounts to a false and fraudulent misrepresentation." Gidney v. Chapple, 26 Okla. 737, 110 P. 1099.

To the same effect, see Heggen v. Kilpatrick, 133 Okla. 145, 271 P. 643.

"Though one may be under no duty to speak, if he undertakes to do so, he must tell the truth, and not suppress facts within his knowledge or materially qualify those stated.

"Fraudulent representations may consist of half-truths calculated to deceive, and a representation literally true is actionable if used to create an impression substantially false." Sullivan v. Helbing (Cal. App.) 226 P. 803.

To the same effect, see 56 A. L. R. 437 (n).

"A duty to speak may arise from partial disclosure, the speaker being under a duty to say nothing or to tell the whole truth. One conveying a false impression by the disclosure of some facts and the concealment of others is guilty of fraud, even though his statement is true as far as it goes, since such concealment is in effect a false representation that what is disclosed is the whole truth." 26 C. J. 1074, par. 17.

If we may be permitted to go from the gladsome light of jurisprudence into the softer glow of the English classics, we would say, by slightly paraphrasing:

Fraud is a monster of so frightful mien,
As to be hated, needs but to be seen;

Yet seen too oft, familiar with her face,
We first endure, then pity, then embrace.

This court is of the opinion, and so holds, that the plaintiffs in this case are entitled to a new trial, and the judgment and decree of the trial court is reversed, and the cause is remanded to that court, with directions that a new trial be granted.

The Supreme Court acknowledges the aid of District Judge Montgomery, who assisted in the preparation of this opinion. The District Judge's analysis of law and facts

was assigned to a Justice of this court for examination and report. Thereafter the opinion, as modified, was adopted by the court.